UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **Michael Vazquez**, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>v.<br><br>**Melissa Martin** and **Millennium Brilliant Minds, LLC** d/b/a **MMM Marketing**,<br><br>                    Defendants. | No.<br><br>**COLLECTIVE AND CLASS ACTION COMPLAINT**<br><br>**(Jury Demand Endorsed Hereon)** |

Plaintiff, Michael Vazquez ("Plaintiff"), sues the Defendants, Melissa Martin, Millennium Brilliant Minds, LLC d/b/a MMM Marketing ("MMM Marketing"), and John Doe Corporations I-XX, (collectively "Defendants") and alleges as follows:

### PRELIMINARY STATEMENT

1.      This is an action for unpaid wages, liquidated damages, attorneys' fees, costs, and interest under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq.; and Ohio Revised Code Ann. ("ORC") § 4111 for Defendants' failure to pay Plaintiff add similarly situated individuals all earned minimum and overtime wages.

2.      The FLSA was enacted "to protect all covered workers from substandard wages and oppressive working hours." Barrentine v. Ark Best Freight Sys. Inc., 450 U.S. 728, 739 (1981). Under the FLSA, employers must pay all non-exempt employees a minimum wage of pay for all time spent working during their regular 40-hour workweeks.  See 29 U.S.C. § 206(a).  Under the FLSA, employers must pay all non-exempt employees one and one-half their regular rate of pay for all hours worked in excess of 40 hours in a workweek.  See 29 U.S.C § 207.

-1-

3.      ORC § 4111, et seq. establishes the law regarding minimum wage and overtime within the state of Ohio.

4.      Plaintiff brings this action on behalf of himself and all similarly-situated current and former employees of Defendants who were sales agents classified by Defendants as independent contractors.

5.      Plaintiff brings a collective action under the FLSA to recover the unpaid minimum wages and overtime owed to them individually and on behalf of all other similarly situated employees, current and former, of Defendants.  Members of the Collective Action are referred to as the "Collective Members."

6.      Additionally, Defendants' failure to compensate Plaintiff and all other similarly-situated employees at a rate equal to Ohio's required minimum wage and overtime rates violates ORC § 4111, et seq.  Plaintiff, therefore, brings a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure to recover unpaid wages and other damages owed under Ohio wage laws. Members of the Rule 23 Ohio Class Action are referred to as "Class Members."

7.      The Collective Members are all current and former employees who worked as sales agents for Defendants and were classified as independent contractors at any time starting three years before this Complaint was filed, up to the present.

8.      The Class Members are all current and former employees who worked as sales agents for Defendants in the State of Ohio and were classified as independent contractors at any time starting three years before this Complaint was filed, up to the present.

9.      Defendants own and operate an enterprise that sells energy contracts to their customers and potential customers.

10.     At all relevant times, Defendants have operated pursuant to a policy and practice of intentionally misclassifying Plaintiff and all other similarly-situated employees as independent contractors not subject to the FLSA's overtime and minimum wage provisions.

11.     At all relevant times, pursuant to this misclassification, Defendants have willfully refused to pay a minimum wage and willfully refuse to pay overtime.

12.     In willfully refusing to pay a minimum wage and willfully refusing to pay overtime, Defendants have violated the minimum wage provisions of 29 U.S.C. § 206 and the overtime provisions of 29 U.S.C. § 207.

13.     In willfully refusing to pay a minimum wage and willfully refusing to pay overtime, Defendants have violated the minimum wage and overtime provisions of ORC § 4111, et seq.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 201, *et seq*. because this civil action arises under the Constitution and law of the United States.  This Court also has subject matter jurisdiction pursuant 28 U.S.C. § 1367 because the state law claims asserted herein are so related to claims in this action over which this Court has subject matter jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

15.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(ii) because acts giving rise to the claims of Plaintiff occurred within the Southern District of Ohio, and Defendants regularly conduct business in and have engaged in the wrongful conduct alleged herein – and, thus, are subject to personal jurisdiction in – this judicial district.

## PARTIES

16.     At all material times, Plaintiff is an individual residing in Columbus, Ohio, and is a former employee of Defendants.

17.     At all material times, and on information and belief, Defendant Millennium Brilliant Minds, LLC is a limited liability company licensed to transact business in the State of Ohio.  At all material times, Defendant Millennium Brilliant Minds, LLC does business, has offices, and/or maintains agents for the transaction of its customary business in Columbus, Ohio.

18.     At all material times, Defendant Millennium Brilliant Minds, LLC does and/or did business as "MMM Marketing."

19.     At all relevant times, MMM Marketing was an employer under the FLSA.  The FLSA defines "employer" as any person who acts directly or indirectly in the interest of an employer in relation to an employee.  At all relevant times, MMM Marketing had the authority to hire and fire employees, supervised and controlled work schedules or the conditions of employment, determined the rate and method of payment, and maintained employment records in connection with Plaintiff's employment with Defendants.  As a person who acted in the interest of Defendants in relation to the company's employees, MMM Marketing is subject to liability under the FLSA. The decision to misclassify Plaintiff, the Collective Members, and the Class Members as independent contractors and thereby circumvent the minimum and overtime wage requirements of the FLSA and state law was made and/or approved by MMM Marketing.

20.     On information and belief, Defendants John Doe Corporations I-XX are and/or were, at all relevant times, individuals, groups, partnerships, and/or other entities which: (1) may have been working with Defendants to provide energy contracts; (2) may have hired individuals, including the Collective and Class Members to sell energy credits to customers; (3) may have been

involved in Plaintiff's and the Collective and Class Members' damages; and/or (4) are otherwise proper parties to this lawsuit. The identities of Defendants John Doe Corporations I-XX remain unknown despite Plaintiff's due diligence.

21. Defendant Melissa Martin is an owner of MMM Marketing and was at all relevant times Plaintiff's employer as defined by the FLSA, 29 U.S.C. § 203(d).

22. Under the FLSA, Melissa Martin is an employer. The FLSA defines "employer" as any person who acts directly or indirectly in the interest of an employer in relation to an employee. Melissa Martin is an owner of MMM Marketing. At all relevant times, Melissa Martin had the authority to hire and fire employees, supervised and controlled work schedules or the conditions of employment, determined the rate and method of payment, and maintained employment records in connection with Plaintiff's employment with Defendants. As a person who acted in the interest of Defendants in relation to the company's employees, Melissa Martin is subject to individual liability under the FLSA. The decision to misclassify Plaintiff, the Collective Members and the Class Members as independent contractors and thereby circumvent the minimum and overtime wage requirements of the FLSA and state law was made and/or approved by Melissa Martin.

23. At all material times, Defendants are Plaintiff's "employer" as defined by the FLSA, 29 U.S.C. § 201, *et seq*.

24. At all material times, Defendants are Plaintiff's "employer" as defined by ORC § 4111, et seq.

25. At all material times, Defendants have operated as a "single enterprise" within the meaning of Section 203(r)(1) of the FLSA. 29 U.S.C. § 203(r)(1). That is, Defendants perform

related activities through unified operation and common control for a common business purpose; namely, the operation of a company selling energy contracts to customers.

26.     At all material times: (1) Defendants were not completely disassociated with respect to the employment of Plaintiff; and (2) Defendants were under common control.  In any event, at all relevant times, all Defendants were joint employers under the FLSA.

27.     Defendants are engaged in related activities, *i.e.* all activities which are necessary to the sales and procurement of energy credits and contracts to customers.

28.     Defendants constitute a unified operation because they have organized the performance of their related activities so that they are an organized business system, which is an economic unit directed to the accomplishment of a common business purpose.

29.     At all material times, Defendants were Plaintiff's, the Collective Members' and the Class Members' "Joint Employer." Two or more distinct entities can exert significant control over the same employee such that they are "joint employers." *E.g. In re Enterprise Rent-A-Car*, 683 F.3d 462, 467 (3d Cir. 2012). Analyzing whether an entity is a "joint employer" for purposes of the FLSA requires looking to several, non-exclusive factors in relation to the alleged employer's: (1) authority to hire and fire the relevant employees; (2) authority to promulgate work rules and assignments and to set the employees' conditions of employment: compensation, benefits, and work schedules, including the rate and method of payment; (3) involvement in day-to-day employee supervision, including employee discipline; and (4) actual control of employee records, such as payroll, insurance, or taxes. The Court may also consider the totality of the circumstances, economic realities, and other information suggesting "significant control," which can be persuasive in conjunction with the enumerated elements of the test. *Id*. at 470.

30. At all material times, Defendants had the authority to fire Plaintiff, the Collective Members, and the Class Members. Moreover, Plaintiff, the Collective Members, and the Class Members were required and expected to abide by the enterprise-wise rules and procedures established jointly by Defendants. The decision to misclassify Plaintiff, the Collective Members, and the Class Members as independent contractors, and thereby circumvent the minimum wage and overtime requirements of the FLSA and Ohio law was made and/or approved jointly by Defendants. Moreover, the reduction in labor costs and corresponding increase in profits that resulted from misclassifying Plaintiff, the Collective Members, and the Class Members as independent contractors were shared by Defendants.

31. At all material times, Defendants were Plaintiff's, the Collective Members' and the Class Members' "single employer." Single employer/enterprise theory examines whether "separate corporations are not what they appear to be, that in truth they are but divisions or departments of a single enterprise." *Davis v. Abington Mem'l Hosp.*, 817 F. Supp. 2d 556, 564 (E.D. Pa. 2011) (citing *NLRB v. Deena Artware, Inc.*, 361 U.S. 398, 401 (1960)). The analysis has four elements: (1) the interrelation of operations between the corporations; (2) whether the corporations share common management; (3) whether there was centralized control of labor relations; and (4) whether there existed common ownership or financial control. *Katz v. DNC Servs. Corp.* , No. CV 16-5800, 2018 WL 692164, at *3 (E.D. Pa. Sep. 27, 2019) (citing *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 84 (3d Cir. 2003)).

32. Defendants work together as a single enterprise in the business of selling and procuring energy credits and contracts. Defendants all share in any profit or loss resulting in the operation of their enterprise. Defendants share management. The decision to misclassify Plaintiff, the Collective Members, and the Class Members as independent contractors, and thereby

circumvent the minimum wage and overtime requirements of the FLSA and Ohio law, was made jointly by Defendants. Moreover, the reduction in labor costs and corresponding increase in profits that resulted from misclassifying Plaintiff, the Collective Members, and the Class Members as independent contractors were shared by Defendants.

33.     Plaintiff, in his work for Defendants, was employed by an enterprise engaged in commerce that had annual gross sales of at least $500,000.

34.     At all relevant times, Plaintiff, in his work for Defendants, was engaged in interstate commerce.

35.     Plaintiff, in his work for Defendants, regularly handled goods produced or transported in interstate commerce.

## NATURE OF THE CLAIM

36.     Defendants do business as Tomorrow Energy and sell energy credits and contracts to customers.

37.     Plaintiff was hired by Defendants and worked for Defendants as a sales agent from approximately April 27, 2023 through approximately December 1, 2023.

38.     At all relevant times, in his work for Defendants, Plaintiff worked as a sales agent, walking door to door to sell energy contracts to customers throughout cities in Ohio.

39.     Defendants, in their sole discretion, agreed to compensate Plaintiff solely on a commission basis.   Plaintiff was compensated by Defendants in this manner, regardless of how many hours he worked in a given workweek.

40.     Rather than classify Plaintiff as an employee, Defendants classified him as an independent contractor not subject to the FLSA's minimum wage and overtime provisions.

41.     Plaintiff, in his work for Defendants, worked six days per week.

42. Plaintiff, in his work for Defendants, worked a minimum of 10 hours per day and often worked 12 or more hours per day.

43. As a matter of common policy and practice, Defendants misclassify all of their sales agents as independent contractors not subject to the FLSA's overtime and minimum wage provisions.

44. Consistent with this common policy and practice, Plaintiff and others similarly situated individuals have been intentionally misclassified by Defendants as independent contractors not subject to the FLSA's overtime and minimum wage provisions.

45. As a result of Defendants' common misclassification policy, Defendants have not paid a minimum wage or overtime pay to Plaintiff and others similarly situated.

46. Specifically, Defendants misclassified Plaintiff and others similarly situated as independent contractors not subject to the FLSA's overtime and minimum wage provisions and required Plaintiff and others similarly situated to work 40 or more hours per week and did not pay them an hourly wage equal to the applicable minimum wage and did not pay them overtime compensation at a rate of one and one-half times their regular rates.

47. Pursuant to Defendants' misclassification, Plaintiff and others similarly situated were paid entirely based on commission from the sales they made to customers. Plaintiff and others similarly situated were compensated by Defendants in this manner, regardless of how many hours they worked in a given workweek.

48. Each day, Defendants' managers drove Plaintiff and others similarly situated to the areas that they would be working. Defendants, through their managers and/or agents, decided in which areas Plaintiff and others similarly situated would work.

49.     Plaintiff and others similarly situated were required to wear a uniform and were required to follow a script provided by Defendants in order to try and make sales to customers.

50.     In order to make a sale, Plaintiff and others similarly situated were required to connect the customer with a third-party verification service and promptly leave the customer's premises.

51.     Defendants still retained ultimate authority to accept or reject the customer's agreement.

52.     The FLSA applied to Plaintiff and all individuals similarly situated at all times during which they worked for Defendants.  No exceptions or exemptions to the FLSA apply to Plaintiff and those similarly situated.

53.     Upon information and belief, Defendants employed hundreds of sales agents throughout the relevant time period without paying a minimum wage or overtime pay, and while denying them the rights and benefits due an employee.

54.     At all relevant times, Defendants directly or indirectly exercised significant control over the wages, hours, and working conditions of Plaintiff and similarly situated individuals.

55.     At all relevant times, the employment terms, conditions, and policies that applied to Plaintiff were the same as those applied to other putative Collective Members, and Class Members who also worked as sales agents for Defendants.

56.     Plaintiff and the putative Collective Members and Class Members incurred financial loss, injury, and damage as a result of Defendants' business practice of misclassifying them as exempt employees, failing to pay them a minimum wage and overtime pay.

57.    Because Defendants failed to pay their employees proper wages, the putative Collective Members' and Class Members' income consisted solely of the commissions paid on deals that closed.

58.    Closing a sale was not a guarantee of payment.  Because Defendants retained authority to reject customer agreements, other issues could arise after closing a deal that would result in Plaintiff not receiving a commission.

59.    Defendants' misclassification of Plaintiff and other putative Collective Members and Class Members as independent contractors was specifically intended to enhance Defendants' profit margins at the expense of the putative Collective Members and Class Members as follows: (1) willfully failing to pay sales agents the minimum wage in violation of the FLSA and ORC § 4111, et seq.; (2) willfully suffering and permitting Plaintiff and the putative Collective Members and Class Members to work in excess of 40 hours in a given workweek without paying overtime compensation at a rate of one and one-half times their regular rates; and (3) adopting and implementing employment policies that violate the FLSA and ORC § 4111, et seq.

60.    Defendants' misclassification of Plaintiff and those similarly situated was willful.

61.    Defendants knew or should have known that it was improper to classify Plaintiff and the putative Collective Members and Class Members as independent contractors.

62.    Workers in the putative Collective and Class cannot "elect" to be treated as employees or independent contractors.  Nor can workers in the putative Collective or Class agree to be paid less than the applicable minimum wage.  Despite this, Defendants unfairly, unlawfully, fraudulently, and unconscionably attempted to coerce workers in the putative Collective and Class to waive their statutory rights and elect to be treated as independent contractors.

63.     Any contract which attempts to have workers in the putative Collective and Class waive, limit, or abridge their statutory rights to be treated as an employee under the FLSA or other applicable wage and hour laws is void, unenforceable, unconscionable, and contrary to public policy.

64.     The determining factor as to whether Plaintiff and those similarly situated are employees or independent contractors under the FLSA is not the workers' elections, subjective intent, or any contract.  Rather, the test for determining whether an individual is an "employee" under the FLSA is the economic reality test.  *See Rutherford Food Corp. v. McComb*, 331 U.S. 722, 727 (1947).  Under the economic reality test, employee status turns on whether the individual is, as a matter of economic reality, in business for herself and truly independent, or, rather, is economically dependent upon finding employment in others.

65.     Under the applicable test, court use the following factors to determine economic dependence and employment status: (1) the degree of control exercised by the alleged employer; (2) the relative investments of the alleged employer and employee; (3) the degree to which the employee's opportunity for profit and loss is determine by the employer; (4) the skill and initiative required in performing the job; (5) the permanency of the relationship; and (6) the degree to which the alleged employee's tasks are integral to the employer's business.

66.     The totality of circumstances surrounding the employment relationship between Defendants and the putative Collective and Class establishes economic dependence by the putative Collective and Class on Defendants and employee status.  Here, Plaintiff and all individuals similarly situated are not in business for themselves and truly independent, but rather are economically dependent upon finding employment in Defendants.  The putative Collective and Class are not engaged in occupations or businesses distinct from that of Defendants.  To the

contrary, the putative Collective and Class are the basis for Defendants' business. Defendants retain pervasive control over the business operation as a whole, and putative Collective and Class.

### Degree of Control Exercised by Defendants

67.    Plaintiff and the other members of the putative Class do not exert control over any meaningful part of Defendants' business operation and do not stand as a separate economic entity from Defendants. Defendants exercise control over all aspects of the working relationship with Plaintiff and the other Collective and Class Members.

68.    Plaintiff and the Collective and Class Members' economic status is inextricably linked to conditions over which Defendants have complete control, including without limitation advertising and promotion, business and financial relationships with customers, business and financial relationship with insurers, and customer volume.

69.    Defendants exercise the following significant control over the work conditions of Plaintiff and others similarly situated:

> a.    Defendants require Plaintiff and putative Collective and Class to work minimum 8 hours per day, often more than 10 hours per day, six days per week;
>
> b.    As a result, Defendants require Plaintiff and putative Collective and Class to routinely work in excess of 60 hours per week;
>
> c.    Defendants require Plaintiff and the putative Collective and Class to follow a script provided by Defendants;
>
> d.    Defendants pay Plaintiff and the putative Collective and Class only commission based on the sales they made;

e. Defendants retained ultimate authority to accept or reject a customer's agreement;

f. Defendants direct Plaintiff and the putative Collective and Class with respect to which areas to attempt to make sales each day; and

g. Defendants provided necessary tools and equipment Plaintiff and the putative Collective and Class have to use.

**Facts Establishing No Skill or Initiative of a Person in Business for Themselves**

70. Plaintiff, like all members of the putative Collective and Class, does not exercise the skill and initiative of a person in business for oneself.

71. Plaintiff and the putative Collective and Class are not required to have any specialized or unusual skills to perform their jobs. The skills used in performing sales work are commensurate with those exercised by ordinary people.

72. Plaintiff and the putative Collective and Class do not have the opportunity to exercise the business skills and initiative necessary to elevate their status to that of an independent contractor: they own no enterprise, nor do they maintain a separate business structure or facility.

73. Defendants do not permit Plaintiff and the putative Collective and Class to hire or subcontract other qualified individuals to provide additional sales work to customers, thereby increasing their revenue, as an independent contractor in business for himself would have the authority to do.

**Facts Establishing Relative Investment**

74. Plaintiff's and the putative Collective's and Class's relative investment is minor when compared to the investment made by Defendants.

75. Plaintiff and the putative Collective and Class make no financial investment in Defendants' facilities, advertising, maintenance, staffing, and contractual relationships. All capital investment and risk belong to Defendants.

76. Absent Defendants' investment and provision of the business, the sales agents would not earn anything.

**Facts Establishing Opportunity for Profit and Loss**

77. Defendants manage all aspects of the business operation, including without limitation attracting investors, establishing business relationships, maintaining the premises, establishing the hours of operation, coordinating advertising, and hiring and controlling of staff. Defendants provide all necessary capital to open and operate the business.

78. Neither Plaintiff nor the putative Collective and Class have responsibility for any aspect of Defendants' ongoing business risk.

**Facts Establishing Permanency**

79. Plaintiff, the Collective Members, and the Class Members were hired by Defendants on a full-time basis.

80. Plaintiff's, the Collective Members' and the Class Members' work for Defendants was not meant to be on a temporary basis. They were given no specific end-date by Defendants.

81. The amount of time spent by Plaintiff, the Collective Members and the Class Members in their work for Defendants precluded them taking other meaningful employment.

**Fact Establishing Members of the Putative Collective and Class Are an Integral Part of Defendants' Business**

82. Plaintiff and the putative Collective and Class are critical to Defendants' success. Defendants' operation in wholly dependent on the energy services that Plaintiff and the putative Collective and Class sells to customers.

83.     The primary "product" or "good" Defendants are in business to sell consists of energy contracts which are sold to customers by members of the putative Collective and Class.

84.     Members of the putative Collective and Class, like Plaintiff, are economically dependent on Defendants and subject to significant control by Defendants.

**Facts Establishing that Defendants' Acts Were Willful**

85.     All actions and agreements by Defendants described herein were willful and intentional, and they were not the result of mistake or inadvertence.

86.     Defendants were aware that the FLSA applies to their business at all relevant times and that, under the economic realities test applicable to determining employment status under those laws, Plaintiff and Members of the putative Collective and Class were misclassified as independent contractors.

87.     Sales agents working under conditions similar to those employed with Defendants have been determined to be employees–not independent contractors–in other FLSA cases.

## FLSA COLLECTIVE ACTION ALLEGATIONS

88.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

89.     Plaintiff brings the FLSA claims in this action as a collective action under 29 U.S.C. § 216(b).

90.     Plaintiff asserts those claims on behalf of himself, and on behalf of all similarly situated sales agents of Defendants, who were not paid all minimum wage and overtime compensation required by the FLSA during the relevant time period as a result of Defendants' compensation policies and practices.

91.     Plaintiff seeks to notify the following individuals of their rights under 29 U.S.C. § 216(b) to join this action by filing in this Court written notice of their consent to join this action:

> **All sales agents (or individuals with other similar job duties or titles) who worked for Defendants and were misclassified as independent contractors at any time during the past three years.**

92.     The FLSA provides for a three-year statute of limitations for causes of action arising out of a willful violation of the Act. 29 U.S.C. § 255.  As alleged above, Plaintiff and similarly situated sales agents' claims arise out of Defendants' willful violations of the FLSA. Accordingly, the Court should require appropriate notice of this action be given to all sales agents employed by Defendants within three years from the filing of this Complaint.

93.     Upon information and belief, Defendants have employed more than five hundred (500) sales agents during the period relevant to this action.

94.     The identities of these individuals, as a group, are known only to Defendants. Because the numerous members of this collective action are unknown to Plaintiff, joinder of each member is not practicable.

95.     Because these similarly situated employees are readily identifiable by Defendants and may be located through their records, they may be readily notified of this action and allowed to opt into it pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their FLSA claims.

96.     Collective adjudication is appropriate in this case because the individuals whom Plaintiff wish to notify of this action have been employed in positions similar to Plaintiff; have performed work similar to Plaintiff; and have been subject to compensation practices similar to those to which Plaintiff have been subjected, including unlawful misclassification as independent

contractors and failure to pay the applicable minimum wage and overtime rates as required by the FLSA.

## **OHIO CLASS ACTION ALLEGATIONS**

97.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

98.     Plaintiff brings his Ohio wage claims as a Rule 23 class action on behalf of the following Class Members:

> **All sales agents (or individuals with other similar job duties or titles) who worked for Defendants in Ohio and were misclassified as independent contractors at any time during the past three years.**

99.     <u>Numerosity</u>.  The number of Class Members is believed to be over two hundred. This volume makes bringing the claims of each individual Class Member before this Court impracticable.  Likewise, joining each individual Class Member as a plaintiff in this action is impracticable.  Furthermore, the identity of the Class Members will be determined from Defendants' records, as will the compensation paid to each of them.  As such, a class action is a reasonable and practical means of resolving these claims.  To require individual actions would prejudice the Class Members and Defendants.

100.     <u>Typicality</u>.  Plaintiff's Ohio wage claims are typical of the Class Members because like the Class Members, Plaintiff was subject to Defendants' uniform policies and practices and was compensated in the same manner as the other Class Members.  Defendants regularly failed to compensate Plaintiff and the Class Members at least the applicable minimum wage for all hours worked.  Defendants regularly required Plaintiff and the Class Members to work in excess of 40 hours in a given workweek without paying them overtime. Defendants misclassified Plaintiff and the Class Members as independent contractors.  This was commonly, though not exclusively, done

-18-

in order to prevent Plaintiff and the Class Members from being paid a minimum wage for all hours worked and overtime for all hours worked in excess of 40 in a given workweek. As a result, Defendants failed to pay Plaintiff and the Class Members both minimum wage and overtime for all hours worked.

101.     As a result of such policy and practice by Defendants, Defendants violated the minimum and overtime wage provisions of ORC § 4111, et seq.

102.     <u>Adequacy</u>. Plaintiff is a representative party who will fairly and adequately protect the interests of the Class Members because it is in his interest to effectively prosecute the claims in this Complaint in order to obtain the unpaid wages and penalties required under Ohio law. Plaintiff has retained attorneys who are competent in both class actions and wage and hour litigation. Plaintiff does not have any interest that may be contrary to or in conflict with the claims of the Class Members he seeks to represent.

103.     <u>Commonality</u>. Common issues of fact and law predominate over any individual questions in this matter. The common issues of fact include, but are not limited to:

    a.     The number of hours worked by Plaintiff and the Class Members;

    b.     The amounts paid to Plaintiff and the Class Members;

    c.     The degree of control Defendants exerted over Plaintiff and the Class Members;

    d.     The relative investments of Defendants and Plaintiff and the Class Members;

    e.     The degree to which Plaintiff and the Class Members' opportunity for profit and loss was determined by Defendants;

    f.     The skill and initiative required in performing the job;

g. The permanency of the relationship; and

h. The degree to which Plaintiff and the Class Members' tasks are integral to Defendants' business.

104. Common issues of law include, but are not limited to:

a. Whether Defendants paid all minimum wages due and owing to Plaintiff and the Class Members;

b. Whether Defendants paid overtime wages due and owing to Plaintiff and the Class Members for all hours worked in excess of 40 in a given workweek;

c. Whether Defendants improperly misclassified Plaintiff and the Class Action as independent contractors;

d. Whether Plaintiff and the Class Members are entitled to compensatory damages;

e. The proper measure of damages sustained by Plaintiff and the Class Members; and

f. Whether Defendants' actions were "willful."

105. <u>Superiority</u>. A class action is superior to other available means for the fair and efficient adjudication of this lawsuit. Even in the event any of the Class Members could afford to pursue individual litigation against companies the size of Defendants, doing so would unduly burden the system. Individual litigation would magnify the delay and expense to all parties and burden the court system with duplicative lawsuits. Prosecution of separate actions by individual Class Members would create the risk of inconsistent or varying judicial results and establish incompatible standards of conduct for Defendants.

106.     A class action, by contrast, presents far fewer management difficulties and affords the benefits of uniform adjudication of the claims, financial economy for the parties, and comprehensive supervision by a single court and Judge.  By concentrating this litigation in one forum, judicial economy and parity among the claims of individual Class Members are promoted. Additionally, class treatment in this matter will provide for judicial consistency. The identities of the Class Members are readily identifiable from Defendants' records.

107.     This type of case is well-suited for class action treatment because: (1) Defendants' practices, policies, and/or procedures were uniform; (2) the burden is on each Defendant to prove it properly compensated its employees; (3) the burden is on each Defendant to accurately record hours worked by employees; and (4) the burden is on each Defendant to prove it properly imposed the tip credit upon its employees.

108.     Ultimately, a class action is a superior forum to resolve the state law claims set forth in this Complaint because of the common nucleus of operative facts centered on the continued failure of Defendants to pay Plaintiff and the Class Members according to applicable laws.

### COUNT ONE: FAIR LABOR STANDARDS ACT
### FAILURE TO PAY MINIMUM WAGE
**(Against All Defendants)**

109.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

110.     Defendants willfully failed or refused to pay Plaintiff and the Collective Members minimum wage for all hours worked in a given workweek throughout the duration of their employment.

111.     As a result, Defendants failed to compensate Plaintiff and the Collective Members at least the applicable minimum wage rate for all hours worked.

112. Defendants' practice of willfully failing or refusing to pay Plaintiff and the Collective Members at the required minimum wage rate violates the FLSA, 29 U.S.C. § 206(a).

113. Defendants knew that – or acted with reckless disregard as to whether – their failure to pay Plaintiff and the Collective Members the proper minimum wage rate would violate federal and state law, and Defendants were aware of the FLSA minimum wage requirements during Plaintiff's and the Collective Members' employment. As such, Defendants' conduct constitutes a willful violation of the FLSA.

114. Plaintiff and the Collective Members are therefore entitled to compensation for the unpaid minimum wages at an hourly rate, to be proven at trial, plus an additional equal amount as liquidated damages, together with interest, reasonable attorney's fees, and costs.

**COUNT TWO: FAIR LABOR STANDARDS ACT**
**FAILURE TO PAY OVERTIME**
**(Against All Defendants)**

115. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

116. Defendants willfully failed or refused to pay Plaintiff and the Collective Members the applicable overtime wage for all hours worked in excess of 40 in a given workweek throughout the duration of their employment.

117. As a result, Defendants failed to compensate Plaintiff and the Collective Members at least the applicable overtime wage rate for all hours worked in excess of 40 in a given workweek.

118. Defendants' practice of willfully failing or refusing to pay Plaintiff and the Collective Members at the required overtime wage rate violates the FLSA, 29 U.S.C. § 207(a).

119. Defendants knew that – or acted with reckless disregard as to whether – their failure to pay Plaintiff and the Collective Members the proper overtime rate would violate federal and

state law, and Defendants were aware of the FLSA overtime requirements during Plaintiff and the Collective Members' employment. As such, Defendants' conduct constitutes a willful violation of the FLSA.

120. Plaintiff and the Collective Members are therefore entitled to compensation for the unpaid overtime wages at an hourly rate, to be proven at trial, plus an additional equal amount as liquidated damages, together with interest, reasonable attorney's fees, and costs.

### COUNT THREE: OHIO MINIMUM WAGE ACT ORC § 4111, ET SEQ. FAILURE TO PAY MINIMUM WAGE

121. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

122. Defendants willfully failed or refused to pay Plaintiff and the Class Members minimum wage for all hours worked in a given workweek throughout the duration of their employment.

123. As a result, Defendants failed to compensate Plaintiff and the Class Members at least the applicable minimum wage rate for all hours worked.

124. Defendants' practice of willfully failing or refusing to pay Plaintiff and the Class Members at the required minimum wage rate violates the minimum wage provisions of ORC § 4111, *et seq*.

125. Defendants knew that – or acted with reckless disregard as to whether – their failure to pay Plaintiff and the Class Members the proper minimum wage rate would violate federal and state law, and Defendants were aware of the FLSA minimum wage requirements during Plaintiff and the Class Members' employment. As such, Defendants' conduct constitutes a willful violation of the Ohio law.

126.    Plaintiff and the Class Members are therefore entitled to compensation for the unpaid minimum wages at an hourly rate, to be proven at trial, plus an additional amount equal to twice all unpaid wages, together with interest, reasonable attorney's fees, and costs.

## COUNT FOUR: OHIO MINIMUM WAGE ACT ORC § 4111, ET SEQ. FAILURE TO PAY OVERTIME FOR HOURS IN EXCESS OF 40

127.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

128.    Defendants willfully failed or refused to pay Plaintiff and the Class Members the applicable overtime wage for all hours worked in excess of 40 in a given workweek throughout the duration of their employment.

129.    As a result, Defendants failed to compensate Plaintiff and the Class Members at least the applicable overtime wage rate for all hours worked in excess of 40 in a given workweek.

130.    Defendants' practice of willfully failing or refusing to pay Plaintiff and the Class Members at the required overtime wage rate violates ORC § 4111, et seq.

131.    Defendants knew that – or acted with reckless disregard as to whether – their failure to pay Plaintiff and the Class Members the proper overtime rate would violate federal and state law, and Defendants were aware of the FLSA overtime requirements during Plaintiff's and the Class Members' employment. As such, Defendants' conduct constitutes a willful violation of Ohio law.

132.    Plaintiff and the Class Members are therefore entitled to compensation for the unpaid overtime wages at an hourly rate, to be proven at trial, plus an additional amount equal to twice all unpaid wages, together with interest, reasonable attorney's fees, and costs.

WHEREFORE, Plaintiff, Michael Vazquez, individually, and on behalf of all other similarly situated persons, requests that this Court grant the following relief in Plaintiff's, the Collective Members' and the Class Members' favor, and against Defendants:

A.  For the Court to declare and find Defendants committed one or more of the following acts:

    i.  violated the minimum wage and overtime provisions of the FLSA;

    ii.  willfully violated the minimum wage and overtime provisions of the FLSA;

    iii.  violated the minimum wage and overtime provisions of the OMFWSA;

    iv.  willfully violated the minimum wage and overtime provisions of the OMFWSA;

B.  For the Court to award damages in the amounts of all unpaid overtime wages due and owing to Plaintiff, the Collective Members and the Class Members;

C.  For the Court to award compensatory damages, including liquidated damages pursuant to 29 U.S.C. § 216(b), in amounts to be determined at trial;

D.  For the Court to award prejudgment and post-judgment interest on any damages awarded;

E.  For the Court to award all treble damages, interest attorney fees and costs owed to Plaintiff and the Class Members;

F.  For the Court to award Plaintiff's and the Collective Members' reasonable attorneys' fees and costs of the action pursuant to 29 U.S.C. § 216(b) and all other causes of action set forth in this Complaint;

G.    For the Court to provide a reasonable incentive award for Plaintiff to compensate him for the time he spent attempting to recover wages for the Collective Members and for the risks he took in doing so; and

H.    Such other relief as this Court deems just and proper.

## **JURY TRIAL DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

RESPECTFULLY SUBMITTED this 31st day of July, 2024.


SIMON LAW CO.

By: /s/ *James L. Simon*
James L. Simon (OH No. 0089483)
11 ½ N. Franklin Street
Chagrin Falls, OH 44022
Telephone: (216) 816-8696
Email: james@simonsayspay.com